**EDELSTEIN & GROSSMAN**
Attorneys at Law
271 Madison Avenue, 20th Floor
New York, NY 10016
(212) 871-0571
jonathan.edelstein.2@gmail.com
___

May 16, 2011

**VIA ELECTRONIC CASE FILING**
Hon. Joanna Seybert, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

<u>**Re: United States v. Rocco Oppedisano, Docket No. 09-CR-305 (JS)**</u>

Your Honor:

  I respectfully write, on behalf of defendant Rocco Oppedisano, to set forth the defendant's objections to the presentence investigation report ("PSR") and to state his position with respect to the sentencing factors enumerated in 18 U.S.C. § 3553(a). As will be discussed below, defendant submits that his advisory Sentencing Guideline score should be 6 rather than 14, pursuant to U.S.S.G. § 2K2.1(b)(2). Moreover, defendant further submits that the totality of the Section 3553(a) factors militate strongly in favor of a non-custodial sentence.

**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

  Defendant first objects to the Probation Department's calculation of his total offense level at 14 pursuant to U.S.S.G. § 2K2.1(a)(6), with a resulting advisory sentencing range of 18 to 24 months. <u>See</u> PSR, ¶¶ 10, 15, 17, 105. Defendant submits instead that his Guideline level is governed by U.S.S.G. § 2K2.1(b)(2), which provides as follows (emphasis added):

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes ***or collection***, and did not unlawfully discharge or otherwise unlawfully use such firearms or

-1-

ammunition, decrease the offense level determined above to level 6.

Application Note 6 to U.S.S.G. § 2K2.1 further provides that the determination of whether the subject ammunition was kept for "lawful sporting purposes or collection" must be made with regard to the "relevant surrounding circumstances," which include "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." See United States v. Mojica, 214 F.3d 1169, 1171-72 (10th Cir. 2000); United States v. Massey, 462 F.3d 843, 846 (8th Cir. 2006).

The inclusion of this mitigating specific offense characteristic reflects the fact that, "apart from the nature of the defendant's criminal history, his actual or intended use of the firearm was probably the most important factor in determining the sentence." Mojica, 214 F.3d at 1172. As the Eleventh Circuit has noted, "[t]his background note shows that the Sentencing Commission recognized that there are a wide variety of circumstances under which [possession by a felon] may occur and considered the mitigating circumstances of intended lawful use in formulating the Guidelines." United States v. Godfrey, 22 F.3d 1048, 1055 n. 8 (11th Cir.1994).

In the instant case, defendant plainly meets the threshold qualification of not being subject to subsections (a)(1) through (5) of U.S.S.G. § 2K2.1. Defendant does not have any prior felony convictions of drug crimes or crimes of violence,[1] and the offense does not involve a semiautomatic firearm or a firearm described by 26 U.S.C. § 5845(a). Indeed, this offense does not involve any firearm at all. Hence, defendant is not precluded from receiving the "sporting purposes or collection" reduction.

---

[1] Application Note 1 to U.S.S.G. § 2K2.1 states in pertinent part that the term "crime of violence" has "the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2," which is also the same meaning given to the term under 18 U.S.C. § 16. The Second Circuit has held that, for purposes of both the firearm possession guideline and U.S.S.G. § 4B1.2, a conviction of reckless endangerment under New York law is not a "crime of violence" because it lacks the purposeful violent and aggressive conduct required by Begay v. United States, 553 U.S. 137 (2010). See United States v. Gray, 535 F.3d 128, 130-32 (2d Cir. 2008). Moreover, pursuant to Begay itself, driving while intoxicated is also not a crime of violence. See Begay, 553 U.S. at 142-48; see also Gray, 535 F.3d at 131 (discussing the Begay Court's analysis of drunk driving); Dalton v. Ashcroft, 257 F.3d 200, 205-08 (2d Cir. 2001) (driving while intoxicated under New York law is not a crime of violence under 18 U.S.C. § 16, which uses the same definition applicable under the Guidelines). Finally, defendant's 1985 conviction of attempted grand larceny in the second degree is not a "crime of violence" because, as opposed to burglary or robbery, grand larceny neither includes use of force as an element nor meets the purposeful-conduct requirement of Begay. It should be noted that the 1985 conviction did not involve theft from the person of another, and thus does not come within the ambit of United States v. Thrower, 584 F.3d 70 (2d Cir. 2009). Indeed, the Thrower court stated that forms larceny other than from the person "on their face do not appear to qualify as violent crimes." Id. at 73.

Moreover, the "relevant surrounding circumstances," see Application Note 6 supra, militate strongly – indeed overwhelmingly – in favor of a finding that the subject bullets were held for purposes of collection. As noted at trial and in paragraph 63 of the PSR, defendant found the bullets at a demolition site and took them home as a "souvenir" or curio, which on its face means that he viewed the bullets as a collectible rather than intending to use them as ammunition. There were no guns or gun paraphernalia in the apartment, and defendant – who is legitimately employed as a construction manager – does not have any illegal business or enterprise that he might seek to protect with guns. In addition, when the factors listed in the application note are taken *seriatim*, (1) there were no firearms involved in the offense, (2) the offense involved a single, partially full box of ammunition possessed *without* a gun, (3) the ammunition was possessed in the drawer of a credenza, was not immediately to hand, and was never used; (4) defendant has no prior firearms-related convictions; and (5) there are no local laws prohibiting possession of this type of ammunition at home. Indeed, possession of ammunition without a gun can hardly be characterized as anything *other* than possession for purposes of collection, because ammunition by itself cannot be used and has no possible offensive or self-protective purpose.[2]

Accordingly, this Court should find that defendant is entitled to the "sporting purposes or collection" reduction under U.S.S.G. § 2K2.1(b)(2), and amend paragraphs 10, 15, 17 and 105 of the PSR to reflect that his offense level is 6 and that the advisory sentencing range is 1 to 7 months.

## STATEMENT REGARDING SENTENCING FACTORS

At this late date, there can be no doubt that the Sentencing Guidelines are no longer mandatory. See United States v. Booker, 543 U.S. 220 (2005). Instead, pursuant to Kimbrough v. United States, 128 S. Ct. 558 (2007) and Gall v. United States, 128 S. Ct. 586 (2007), the Guidelines are merely a starting point.

While Federal sentencing judges must properly calculate the applicable Guideline offense level and give it "respectful consideration," they have discretion to determine that "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Kimbrough, 128 S. Ct. at 564, 570. Indeed, a sentencing court is required to balance not only the Guidelines but all the factors set forth in 18 U.S.C. § 3553(a), and its overall obligation is to craft a sentence that is "sufficient *but not greater than necessary*" to accomplish these objectives. See 18 U.S.C. § 3553(a) (emphasis added); see also Gall, 128 S. Ct. at 596 n.6 (characterizing Section 3553(a)'s parsimony clause as a "general directive"); United States v. Sanchez, 517 F.3d 651, 660-61 (2d Cir. 2008).

In determining the proper sentence, this Court "*may not presume* that the Guidelines range is reasonable." Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (emphasis added); see also Spears v. United States, 129 S. Ct. 890, 892 (2009). The sentencing court "must make an

---

[2] Cf. United States v. Halpin, 139 F.3d 310, 311 (2d Cir. 1996) (possession of weapon for personal protection does not qualify for "sporting purposes or collection" reduction).

-3-

individualized assessment based on the facts presented," Gall, 128 S. Ct. at 597, and should address non-frivolous arguments put forward by the parties in support of a non-Guideline sentence. See Rita, 127 S. Ct. at 2469; see also United States v. Villafuerte, 502 F.3d 204, 210-11 (2d Cir. 2007).

**A.      18 U.S.C. § 3553(a)(1).**

With these principles in mind, defendant turns to the first of the Section 3553(a) factors, which encompasses "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  In this case, the "nature and circumstances of the offense" stand out for their sheer innocuousness.  Simply put, this is a non-crime.  While defendant's conduct is illegal, and as such is subject to a penalty, few if any reasonable people would characterize that conduct as morally wrong, harmful to society or potentially dangerous to others.  Defendant did not use firearms to protect an illegal enterprise or engage in a reign of terror, but instead took home a partially empty box of bullets as a souvenir from a demolition site.  The keeping of ammunition as a curio, *without* any guns or gun paraphernalia, is very far from the evils that the felon-in-possession statute was intended to prevent.[3]

As noted above, defendant is subject to a reduced Guideline level of 6 because the ammunition was kept solely for purposes of collection.  However, for at least two reasons, this offense is outside the heartland even of cases in which that mitigating factor applies.  First, because there was only ammunition and no gun, defendant's conduct did not pose even a *potential* danger to others.  Without a weapon, there is no possibility of accidental discharge, accidental discovery and use by a visiting child, or similar mishaps.

Second, defendant did not know that keeping ammunition was illegal.  Defendant's last felony conviction occurred in 1993, and at that time (unlike today), the felony probation advisement issued by Nassau County did not include a warning that possession of firearms was illegal.  As the Government is aware, defendant was ready to present proof on this issue at trial if this Court had granted his application to raise a Lambert defense.  Moreover, since ammunition standing alone is not

---

[3] In connection with the nature of the offense, defendant objects to any consideration of the .506 grams of cocaine that were allegedly found in his home.  Defendant submits that, for the same reasons that the jury declined to find possession of cocaine beyond a reasonable doubt – including, *inter alia*, the fact that the cocaine did not appear in the first two photographs of the drawer where it was allegedly found (T.392-95, 429-31; DX.A-C) and the discrepancies with respect to where the cocaine and bullets were located (T.498) – this Court should also find that possession would not be established by a preponderance of the evidence.  Even if this Court were to consider the cocaine as relevant conduct, however, it should be noted that simple possession of cocaine carries a Guideline level of 6, see U.S.S.G. § 2D2.1, and if defendant had been *convicted* of that offense as well as the felon in possession charge, application of the Sentencing Guideline grouping rules to both counts, would have resulted in a total offense level of 8.  See U.S.S.G. § 3D1.4.  Thus, particularly in light of the fact that defendant was acquitted of cocaine possession, this Court should not view that alleged possession as adding materially to the seriousness of the offense.

commonly regarded as a "firearm," defendant was legitimately confused about whether the felon-in-possession laws applied to him. Although this Court has determined that ignorance of the law is not a defense to criminal *liability*, it is certainly a mitigating factor that may be taken into account at *sentencing*.

Turning to defendant's "history and characteristics," it is important to recognize what he is *not* – a career criminal. Although he does have a criminal record, he has a long history of legitimate employment in the auto body and construction fields. He is currently employed as a yard manager and foreman in his brother's construction business, and by all accounts, is hard-working and conscientious. He is also close to, and supportive of, his family members including his aging parents. Rocco Oppedisano is a person who can make, and has made, a positive contribution to society.

Defendant's criminal history itself is notable for several factors. First, all but two of his prior convictions – including all his felonies – are ancient history. Defendant was convicted of attempted grand larceny as a result of an aborted theft at the age of 16, and then had two DWIs and a number of reckless driving incidents between the ages of 20 and 25. These are followed, at an interval of six years, by a charge of attempted criminal possession of stolen property resulting from his purchase of salvaged auto parts that had been reported stolen. It should be noted that defendant owned an auto body shop at that time, see PSR, ¶ 86, and that he undoubtedly bought hundreds or even thousands of parts during this period.

Mr. Oppedisano's only *recent* offense is a misdemeanor DWI in Nassau County. While defendant does not deny the seriousness of driving while intoxicated, the fact remains that this offense was not violent and did not reflect the additional reckless characteristics that characterized his earlier driving incidents. Rocco Oppedisano, at 43, is not the same person and does not have the same temperament as the 16-year-old who unsuccessfully tried to steal a car, the 21-year-old who led police on a high-speed chase or the 24-year-old who drove at 105 miles per hour in a 50-mile zone.

Moreover, all but two of the prior convictions involve driving. These do not form a pattern of conduct with the instant offense, and are not the type of prior offenses that indicate a risk of committing other Federal offenses in the future. To the extent that these convictions may show that defendant has an unmet substance abuse problem, this issue can be addressed by conditions of probation such as mandatory counseling or a prohibition against driving without the permission of his probation officer.[4] This Court should hence find that a criminal history category of II does not understate the risk of Federal recidivism, and that the commission of these long-ago offenses does not preclude or counsel against the imposition of a below-Guideline sentence.

---

[4] The PSR notes that defendant obtained a Florida license following his 2008 DWI conviction in Nassau. It does not appear, however, that defendant broke any laws by obtaining this license, and it should thus not be regarded as an aggravating factor. In any event, this too could be addressed by a condition of probation requiring him to surrender the Florida license and not obtain a license from any jurisdiction without appropriate permission.

In sum, based on the conduct of the instant offense standing alone, the appropriate penalty would not be imprisonment, probation or supervised release; instead, it would be a small fine and an admonition not to possess ammunition again. While this Court may wish to impose a greater penalty in light of defendant's criminal history and his isolated positive drug test while on pretrial release,[5] that penalty should still not include imprisonment, but should be limited to probation with appropriate conditions. This Court was fully aware of defendant's criminal history at the March 4, 2011 court appearance when it indicated that it was not inclined to impose a custodial sentence,[6] and nothing since then warrants a change in that view.

**B.      18 U.S.C. § 3553(a)(2).**

The next of the Section 3553(a) factors requires this Court to "consider[] the general purposes of sentencing." Gall, 128 S. Ct. at 596 n.6. This has four parts:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Id., quoting 18 U.S.C. § 3553(a)(2). Moreover, it is important to heed the admonition of Gall that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall, 128 S. Ct. at 599.

As noted above, the offense at bar here is both victimless and innocuous. Neither general nor specific deterrence require a prison sentence for the sort of conduct at issue here. Furthermore, the type of substance abuse and gambling counseling that defendant might require could be provided much more effectively as a condition of probation than in the prison context, especially since short-term prisoners are often designated to the MDC or MCC where such programs are not available.

Finally, it should be noted that defendant is not a United States citizen and that he may be subject to deportation as a result of this conviction. As stated in paragraph 55 of the PSR, defendant

---

[5] Defendant notes that this Court did not choose to revoke his bail as a result of this test.

[6] The nature of defendant's criminal history was brought to the Court's attention in connection with defendant's pretrial motion to dismiss on Second Amendment grounds, and was again brought up in connection with his application to raise a Lambert defense. The only criminal conviction reflected in the PSR which was not brought out in the pretrial litigation was defendant's 1985 youthful offender adjudication for attempted grand larceny, which pertained to an offense committed when he was 16 years old.

has resided in this country legally since the age of five, and his entire family resides in the New York area. Deportation – which will remove defendant from the only country he has ever known and separate him permanently from his family – would be "an integral part – indeed... the most important part – of the penalty" imposed for this offense. Padilla v. Kentucky, 130 S. Ct. 1473, 1480 (2010); see also id. at 1481 (characterizing deportation as a "particularly severe penalty" that, while not a criminal sanction as such, is "intimately related to the criminal process"). Certainly, now that this nation's highest court has explicitly recognized that deportation is part of the penalty imposed upon a non-citizen offender, this Court can and should conclude that the severity of this penalty means that nothing further is necessary in order to provide just punishment, deterrence and respect for the law.

**C.      18 U.S.C. § 3553(a)(3).**

This Court must further consider "the kinds of sentences available." See 18 U.S.C. § 3553(a)(3). The instant offense does not carry any statutory minimum sentence; therefore, this Court may avail itself of alternatives to incarceration such as probation and supervised release. And as the Supreme Court has emphasized, a non-custodial sentence is not equivalent to getting off scot-free:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

Gall, 128 S. Ct. at 595-96 (citations omitted). Thus, a sentence including a term of probation is adequately punitive.

Moreover, because this Court can craft nearly an infinite array of special conditions that are tailored to the defendant's individual circumstances, supervision will enable it to manage Mr. Oppedisano's conduct going forward and make sure she is monitored in a manner that will keep her on the straight and narrow. This Court may, for instance, require that defendant attend substance abuse and/or gambling counseling, refrain from holding a driver's license without the permission of his probation officer, or set other conditions specifically tailored to defendant's behavior.

**C. 18 U.S.C. § 3553(a)(6).**

With respect to "the need to avoid unwarranted sentence disparities," see 18 U.S.C. § 3553(a)(6),[7] defendant submits that the key term is "unwarranted." As noted above, sentencing is no longer a mechanical process under which all defendants who commit the same offense should receive the same penalty. Instead, the nature of the defendant's *specific* conduct – in this case, possession of ammunition without a gun, purely as a souvenir and without any unlawful intent – is relevant to whether he should receive a greater or lesser penalty then a defendant whose conduct falls within the heartland of the Guidelines. In this case, as discussed at length above, the offense conduct falls overwhelmingly on the mitigating side of the scale, and a below-Guideline sentence would not create an "unwarranted" disparity with respect to others convicted under the felon-in-possession statute. There are, once again, no reasons for this Court to deviate from its professed inclination to impose a non-custodial sentence, and many compelling reasons to follow that inclination.

## CONCLUSION

In light of the foregoing, defendant submits that his advisory Guideline level should be set at 6 rather than 14 as specified in the PSR. Moreover, upon examination of the Section 3553(a) factors, defendant submits that this Court should impose a penalty amounting to a fine and possibly a short term of probation in lieu of imprisonment, and that any term of probation imposed should include appropriate conditions with respect to driving and/or substance abuse counseling.

Sincerely,

/s/

Jonathan I. Edelstein
Attorney for Defendant

cc: AUSA Sean C. Flynn (Via ECF)
USPO Holly S. Kaplan

---

[7] The fourth and fifth Section 3553(a) factors are the Sentencing Guidelines and any relevant Sentencing Commission policy statements, which are addressed in defendant's previous PSR objections and hence require no further treatment here. Moreover, for the reasons discussed in this memorandum, defendant contends that the Guidelines and policy statements are excessively harsh, and that other Section 3553(a) factors outweigh the Guidelines and warrant the imposition of a substantially below-Guideline sentence. Additionally, because no restitution is required for this offense, 18 U.S.C. § 3553(a)(7) is not relevant to the appropriate penalty.